# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SAMUEL BARROW,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 3:15-cv-341 |
| | | | |
| | | | District Judge Walter Herbert Rice |
| -  vs  - | | | Magistrate Judge Michael R. Merz |

LIVING WORD CHURCH, et al.,

|  |  |  |
|---|---|---|
| | Defendants. | : |

---

# DECISION AND ORDER GRANTING MOTION TO AMEND; REPORT AND RECOMMENDATION THAT MOTION TO DISMISS BE DENIED

---

This case is before the Court on Motion of Defendants Living Word Church, Pat Murray, and Jackie Murray (the Moving Defendants) to Dismiss this case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction under the ecclesiastical abstention doctrine and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (ECF No. 19). In response Plaintiff filed a Combined Memorandum in Opposition and Alternative Motion to Amend (ECF No. 26). Additional briefing is filed at ECF No. 34, 35, and 42.

A motion to amend is a non-dispositive matter within the authority of a magistrate judge to hear and determine; a motion to dismiss is classified as dispositive and requires a recommendation for decision.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72.

**Motion to Amend**

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182.     *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980).

The Moving Defendants assert the proposed amendment will be futile because the Second Amended Complaint will still be subject to dismissal for failure to state a claim and they will have to file another motion to dismiss. To avoid that problem and also eliminate any possible appellate issue regarding futility, the Court GRANTS the Motion to Amend and will

treat the Moving Defendants' pending Motion to Dismiss as directed to the Second Amended Complaint.  Plaintiff shall file the Second Amended Complaint separately and forthwith.

The Second Amended Complaint merely adds back one paragraph deleted from the Complaint when it was first amended:

> 61. As a direct and proximate result of the aforementioned actions, Mr. Barrow lost several key relationship and contracts as a result of these actions, including:
>
> A. Hachette Books
> B. Select Sports
> C. Ann Pici, Editor
> D. Peter Miller, Agent
> E. JR Rickertt Management
> F. Joe Bell (sports agent of the Miami Heat's Norris Cole)
> G. Seth Steinberg, Intellectual Property Relationships
> H. Speaking Engagements

(Quoted at ECF No. 35, PageID 240.)

**Motion to Dismiss**

The Moving Defendants assert this Court lacks subject matter jurisdiction over the case "because ecclesiastical abstention precludes consideration by civil courts of claims relating to internal church disputes" and seek dismissal under Fed. R. Civ. P. 12(b)(1)(Motion, ECF No. 19, PageID 71). They also assert the Second Amended Complaint fails to state a claim upon which relief can be granted and seek dismissal under Fed. R. Civ. P. 12(b)(6). *Id.*

The Second Amended Complaint does not contain a statutory reference for asserted subject matter jurisdiction, but purports to plead a claim under 42 U.S.C. § 1981.  Federal

districts courts have original jurisdiction over such claims under both 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights statutes).

The Second Amended Complaint also asserts this Court has supplemental jurisdiction over the other claims made pursuant to 28 U.S.C. § 1367. The Moving Defendants assert that once the federal claim under § 1981 is dismissed, the Court should decline to exercise supplemental jurisdiction over the Ohio law claims (Motion, ECF No. 19, PageID 71). There is a strong presumption against exercise of supplemental jurisdiction once federal claims have been dismissed; residual jurisdiction should be retained "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Packard v. Farmers Ins. Co. of Columbus, Inc.*, 423 Fed. Appx. 580, *11-12 (6th Cir. 2011), *quoting Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

**Ecclesiastical Abstention/Church Autonomy**

For statement of the ecclesiastical abstention doctrine, the Moving Defendants rely principally on *Ogle v. Church of God*, 153 Fed. Appx. 371, 2005 U.S. App. LEXIS 23666 (6th Cir. 2005)("*Ogle I*"). Although *Ogle* is unpublished, it cites a number of published decisions for important principles related to this case.

First of all, because federal courts are courts of limited jurisdiction, the plaintiff bears the burden of establishing subject matter jurisdiction when it is challenged. *Finley v. United States*, 490 U.S. 545, 550 (1989); *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). There is a presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President,*

*Directors and Co. of the Bank of North America,* 4 U.S. 8 (1799).  Facts supporting subject matter jurisdiction must be affirmatively pleaded by the person seeking to show it.  *Bingham v. Cabot,* 3 U.S. 382 (1798).  The burden of proof is on the party asserting jurisdiction if it is challenged.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1935).  A federal court is further obliged to note lack of subject matter jurisdiction *sua sponte. Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908);  *Capron v. Van Noorden*, 6 U.S. 126 (1804);  *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009); *Clark v. United States*, 764 F. 3d 653 (6th Cir. 2014).

Second, subject matter jurisdiction is a threshold question which must be determined before the Court decides any question of the merits and a motion under Fed. R. Civ. P. 12(b)(1) is the appropriate vehicle for raising a subject matter jurisdiction defense.  *Ogle, supra,* *374-75.

Third, the Moving Defendants' challenge is a factual attack on jurisdiction, given that they have attached matter outside the pleadings to their Motion.  Under those circumstances, no presumption of truth attaches to the allegations of the Second Amended Complaint and the Court may consider documentary evidence in deciding the question.  *Ogle, supra,* at *375, *citing Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990).[1]

Fourth, the Free Exercise Clause of the First Amendment to the United States Constitution provides the basis for abstention:

> The Supreme Court has held that in matters involving "questions of discipline, or of faith, or ecclesiastical rule, custom, or law[,]" the Free Exercise Clause requires that no civil court interfere with the determinations of the "highest of these church judicatories to which the matter has been carried." *Watson v. Jones,* 80 U.S. 679, 727, 20 L. Ed. 666 (1871); *see Lewis v. Seventh Day Adventists Lake Region Conference,* 978 F.2d 940, 941-42 (6th Cir. 1992).

---

[1] Moving Defendants miscite *Ohio Nati'l Life* as allowing the weighing of documentary evidence when a facial as opposed to factual attack is made on jurisdiction.  (ECF No. 19, PageID 73).

> The Sixth Circuit has unambiguously stated that "the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy." *Lewis,* 978 F.2d at 942. *See also Yaggie v. Ind.-Ky. Synod, Evangelical Lutheran Church,* 1995 U.S. App. LEXIS 24653, No. 94-5892, 1995 WL 499468, at *3 (6th Cir. Aug. 21, 1995) ("The general rule is that federal courts should be loathe to assert jurisdiction over internal church disputes.") (citing *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709-10, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1995) and *Presbyterian Church v. Hull Church,* 393 U.S. 440, 449, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969)).

*Ogle, supra*, at * 375.  See also Farrell, Note:  Ecclesiastical Abstention and the Crisis in the Catholic Church, 19 Journal of Law and Politics 109, 115-27 (2003).

The Moving Defendants assert Plaintiff's § 1981 claim relate[s] to ecclesiastical matters over which this Court lacks subject matter jurisdiction and summarize Mr. Barrow's discrimination claims as follows:

> Mr. Barrow claims he was discriminated against based upon his race resulting in his loss of good standing with the church.  See Am. Comp. (Doc. No. 2), ¶¶31-35 (PAGE ID 23-24). Specifically, he alleges that in December 2013, church leadership met with him to address untrue allegations that he was falsely representing himself as Living Word clergy, had forged an inmate's signature, and had borrowed money from another defendant and The Living Word church member, Antoinette Nartker. Id. at ¶¶ 31-32 (PAGE ID 23). Mr. Barrow claims that church leadership considered his sexually explicit conduct and/or video and held him to higher expectations than white members of the church. Id. at ¶42 (PAGE ID 25). At this meeting, Mr. Barrow challenged Ms. Nartker's truthfulness and morality. See id. at ¶33.

(ECF No. 19, PageID 73-74.)

Explaining why these claims relate solely to internal church discipline and therefore cannot be adjudicated in a civil court, Moving Defendants attach the Affidavit of Defendant M.

Patrick Murray ("Murray Affidavit", ECF No. 19-1, PageID 84, et seq.) Murray describes himself as Senior Pastor of Defendant The Living Word – Dayton.[2] In that capacity on December 19, 2013, he "conducted a preliminary fact-finding meeting with Mr. Barrow which was prompted by allegations that Mr. Barrow's actions violated church moral tenets." *Id.* at ¶ 6. The allegations had been made by Laura Moore and Antoinette Nartker. *Id.* at ¶ 8. Barrow responded with allegations that Ms. Nartker herself, also a Living Word member, had violated church moral tenets. *Id.* After the meeting there were further investigations "in an attempt to obtain all facts pertaining to this internal church dispute for presentation and decision by the eldership, and the Board of Overseers, if necessary." *Id.* at ¶ 10.

On January 8, 2014, Pastor Murray sent Mr. Barrow the letter which is attached to his Affidavit (ECF No. 19-1, PageID 88-89). The letter advised Barrow that Pastor Murray had concluded as of the December 19th meeting, "since you were not a regular tither at LWC, you were no longer a member in good standing – which prevents you from serving in any LWC volunteer position. Additionally, I concluded that you were not to represent yourself as an agent of Living Word Church in any capacity." (PageID 88; emphasis sic.) After the meeting, Pastor Murray learned that Barrow had demanded Laura Moore's firing from her job at Cashland, representing himself to be an LWC clergy member and that he had filed police reports against Moore and Nartker, with the report as to Moore being false in at least one material respect. *Id.* at PageID 89. Pastor Murray concluded that, pending a final decision by the church, Barrow was not a member in good standing. *Id.* No further church action in the matter is reported.

Barrow claims the ecclesiastical abstention doctrine is inapplicable (Memo. In Opp., ECF No. 26, PageID 153, *et seq.* relying on *Ogle v. Hocker*, 279 Fed. Appx. 391 (6th Cir. 2008)("*Ogle*

---

[2] The parties have stipulated that this is the correct legal name of the Defendant sued herein as "The Living Word Church." (ECF No. 39.)

*II*")).  He disclaims any request that this Court review Living Word's decision to remove him from his status as volunteer clergy or as a parishioner.[3] *Id.*  at PageID 155.  He notes that he was not employed by the church, was not paid for his services, and was neither a professional nor ordained minister. *Id.*  He also disclaims any request for this Court to examine the premises of Living Word's decisions, i.e., whether he engaged in certain alleged conduct and whether that conduct violated the moral tenets of the church.  Instead, he claims that because of his race, the Defendants committed tortious acts against him which interfered with existing or prospective business relationships entirely apart from the church, i.e, his writing and publishing. Importantly, the Moving Defendants do not claim that any contacts they may have made with any of Barrow's publishers or potential publishers was commanded by religious doctrine.

Given that Barrow has disclaimed any request for this Court to review Living Word's internal discipline of him or its doctrine, the Magistrate Judge concludes the Free Exercise Clause does not warrant dismissing this case for lack of subject matter jurisdiction.  *See Ogle II,* at *394-96.

**Failure to State a Claim**

The Moving Defendants also assert Barrow's Second Amended Complaint does not state a claim upon which relief can be granted under 42 U.S.C. § 1981.  They claim Barrow "does not factually or specifically identify any contract or prospective contract, and alleges only interference with an existing relationship between him and his literary agent" which caused the literary agent to drop Barrow as a client (Motion, ECF No. 19, PageID 79).

---

[3] Pastor Murray's letter does not use the term "parishioner," but instead speaks of Barrow not being a member in good standing, apparently relating that to his not being a "regular tither."  (ECF No. 19-1, PageID 88.)

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme

Court:

Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Twombly* expressly overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproved of the proposition from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

For purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ...

complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988); *followed Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236 (6th Cir. 1990); *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Rondigo L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 684 (6th Cir. 2011); *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Sogevalor S.A. v. Penn Central Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); see also Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1357 at 311-318 (1990).

The Sixth Circuit has recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012), *quoting Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007), and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie, supra,* at 492, *citing*, *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009), *citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

42 U.S.C. § 1981 provides:

**Equal rights under the law**

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Like Title VII of the 1964 Civil Rights Act, § 1981 requires proof of intentional racial discrimination for liability. *General Building Contractors, Inc., v. Pennsylvania,* 458 U.S. 375 (1982). In general, the courts have held that the standards of liability under the two statutes are the same and the same analytical structure should be employed. *Gay v. Waiters Union,* 694 F.2d 531 (9th Cir. 1982). Section 1981 was amended by the Civil Rights Act of 1991 to add subsections (b) and (c) to overrule the Supreme Court's decision in *Patterson v. McLean,* 491 U.S. 164 (1989).

This Court has already held that tortious interference with a contract can give rise to a § 1981 cause of action. *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club*, No. C-3-98-260, 2003 U.S. Dist. LEXIS 27460 at * 65-66 (S.D. Ohio 2003). That position is reinforced by the later holding of the Supreme Court that "Section 1981 offers relief when racial

discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006).

The Moving Defendants assert that:

> Mr. Barrow provides no facts that would allow the court to infer that any alleged interference of these defendants with his existing relationship with his literary agent through their contact with that literary agent was the result of his race. Instead, he offers only conclusory assertions. See Amended Complaint (Doc. No. 2), ¶ 61 (PAGE ID 28). He fails to provide facts, as the law requires, linking any alleged interference or alleged contact by these Defendants with his publicist (assuming such contact occurred) with his race. See *Han v. University of Dayton*, 541 Fed. Appx. 622, 627 (6th Cir. 2013).

(Motion, ECF No. 19, PageID 80.)

To the contrary, the Magistrate Judge concludes the Second Amended Complaint states a claim for relief under 42 U.S.C. § 1981.  It alleges:

> 46.    Mr. Murray, Mrs. Murray, and Ms. Nartker discussed contacting the agent to teach Mr. Barrow a lesson.  Mrs. Murray stated that she had contacted the agent and others regarding the pending book deals to explain that Mr. Barrow had poor morals and was involved in explicit situations with females and males that other scandals would be released.  These actions were taken based on Mr. Barrow's race.
>
> 47.  Mr. Miller stated that he dropped Mr. Barrow as a client based on remarks from Mrs. Murray and Ms. Nartker regarding the explicit tapes that Ms. Nartker had stolen from him.

(ECF No. 26-1, PageID 171-72.)    Barrow then continues in ¶ 61 to list several "key relationships" he lost as a result of the actions of Defendants based on his race.

The elements of a § 1981 claim include a plaintiff's being a member of a protected class. Barrow pleads in ¶ 12 that he is an African-American.  He alleges in ¶ 14 that he had "signed with" Peter Miller, a literary agent in New York, which is sufficient to allege a contract, and as quoted above that Defendants caused Miller to "drop" Barrow as a client because of his race.  He alleges various instances of use of racial epithets by Defendants, providing at least inferential proof of racial animus. *Id*. at ¶¶ 37-41.  Finally, Barrow pleads the existence of a comparator, a "white pastor [who] had made explicit videos but was appointed Living Word's multi-media director." *Id*. at ¶ 42.

Assuming all these facts can be proved, a jury could reasonably infer that Defendants' claim that they reported Barrow's conduct to his literary agent because of his sexual misconduct is a pretext for interfering with his contractual rights because he is black.  Whether any of these facts can be proved remains to be seen.  They may seem implausible to Defendants because Defendants know other facts which will contradict what Barrow has pleaded.  But that is not the test on a 12(b)(6) motion.

It is therefore respectfully recommended that the Moving Defendants' Motion to Dismiss, construed as directed towards the Second Amended Complaint, be DENIED.


May 3, 2016.

s/ <em>Michael R. Merz</em><br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).