# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SAMUEL BARROW,

                Plaintiff,      :      Case No. 3:15-cv-341

                                     District Judge Walter Herbert Rice
  -  vs  -                               Magistrate Judge Michael R. Merz

LIVING WORD CHURCH, et al.,

                Defendants.     :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON LIVING WORD MOTION TO DISMISS; REPORT AND RECOMMENDATIONS ON LIVING WORD RENEWED MOTION TO DISMISS

       This case is before the Court on Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim filed by Defendants The Living Word – Dayton, Pat Murray, and Jackie Murray (collectively, the "Living Word Defendants")(ECF No. 19).  The Magistrate Judge recommended denying the Motion (Report and Recommendations, "Report," ECF No. 57), the Living Word Defendants objected (ECF No. 68), and Judge Rice has recommitted the matter for reconsideration of the Objections (ECF No. 69).  The Living Word Defendants have renewed their Motion to Dismiss, this time directed to the Plaintiff's Second Amended Complaint (ECF No. 71).  Plaintiff has filed a combined Response in Opposition to the Objections and to the

1

renewed Motion to Dismiss (ECF No. 75).  Finally, the Living Word Defendants have filed a Reply in support (ECF No. 77).

**Procedural History**

The Living Word Defendants initially sought a Fed. R. Civ. P. 12(b)(1) dismissal under the ecclesiastical abstention doctrine and a Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim on which relief can be granted (ECF No. 19).  On the 12(b)(1) Motion, the Magistrate Judge wrote:  "Given that Barrow has disclaimed any request for this Court to review Living Word's internal discipline of him or its doctrine, the Magistrate Judge concludes the Free Exercise Clause does not warrant dismissing this case for lack of subject matter jurisdiction. See *Ogle II*, at *394-96."  (ECF No. 57, PageID 417.)  As to the Rule 12(b)(6) prong of the Motion, the Magistrate Judge concluded it met the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), for pleading a claim for relief under 41 U.S.C. § 1981 (ECF No. 57, PageID 417-23).

# Analysis

**Subject Matter Jurisdiction:  the Free Exercise Clause**

The Living Word Defendants Objections (ECF No. 68) and Renewed Motion to Dismiss (ECF No. 71) parallel one another.  They again assert the Court's assumption of subject matter

2

jurisdiction over this case will violate their rights under the Free Exercise Clause of the First Amendment.

The Magistrate Judge had read the original Complaint as making, *inter alia*, claims that the Living Word Defendants had discriminated against him on the basis of his race in removing him from his position as a volunteer clergyperson and from church membership. Barrow disclaimed that reading. Based on his disclaimer, the Magistrate Judge concluded the ecclesiastical abstention objection was mooted and the Court could exercise jurisdiction over Barrow's § 1981 claims.

Not enough, says the Living Word Defendants, because Barrow wants to compare his treatment by them with their treatment of a white pastor (Objections, ECF No. 68, PageID 506-07) and to "delve into the legitimacy of a December 19, 2013, meeting [which was] part of an internal disciplinary investigation of the church." *Id.* at PageID 507. They describe the meeting as follows:

> The December 19, 2013 meeting was a preliminary fact-finding meeting by the Senior Pastor, a member of the church's Board of Elders, and an associate pastor, prompted by allegations that Mr. Barrow's actions violated church moral tenets. Affidavit of M. Patrick Murray, ¶¶ 6-10 (ECF 19-1, PID # 85-86). The facts pertaining to this internal church dispute were to be obtained for presentation and decision by the eldership, and Board of Overseers, if necessary. *Id*. at ¶¶ 4, 5.

(ECF No. 68, PageID 507, n.3.) Thus they seem to be arguing that any inquiry by this or any civil court into what went on in the December 19, 2013, meeting is precluded by the Free Exercise Clause.

The Magistrate Judge agrees that the Free Exercise Clause requires this Court to abstain from judging the legitimacy of any Living Word decision about who is or can be a member or a

3

clergyperson of their church or about whether it is proper to remove a person from either position on the basis of church moral judgment of that person's behavior. If this were a case about those issues or indeed about interpreting church doctrine in any way, we would be required to abstain. But the Free Exercise Clause does not shield church people from any secular court consideration of what happens in church meetings just because of where it happened. If a church meeting is used as a place to plan to commit torts involving third parties – which is what is alleged here regarding Living Word interference with Barrow's book deals – ecclesiastical abstention will not shield the occurrences in the meeting from secular court consideration.

Holding persons liable for violations of the Civil Rights Act, 42 U.S.C. § 1981, regardless of whether they are clergy people or planned the violation in a church meeting, or even believed they were divinely commanded to carry out that violation, is completely consistent with the Supreme Court's Free Exercise jurisprudence. As the Court held in *Employment Division v. Smith*, 494 U.S. 872 (1990):

> We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition. As described succinctly by Justice Frankfurter in *Minersville School Dist. Bd. of Ed. v. Gobitis*, 310 U.S. 586, 594-595 (1940): "Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities (footnote omitted)." We first had occasion to assert that principle in *Reynolds v. United States*, 98 U.S. 145 (1879), where we rejected the claim that criminal laws against polygamy could not be constitutionally applied to those whose religion commanded the practice. "Laws," we said, "are made for the government of actions, and while they cannot interfere with

4

> mere religious belief and opinions, they may with practices. . . . Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Id.*, at 166-167.

*Id.* at 878-79.

As authority for their contrary position, the Living Word Defendants rely on *Yaggie v. Indiana-Kentucky Synod, Evangelical Lutheran Church*, 1995 U.S. App. LEXIS 24653 (6th Cir. 1995)(unpublished).  Yaggie, a Lutheran pastor, brought an action for defamatory words spoken about him by church authorities in attempting to mediate a dispute between him and his congregation.  The district court held that because this was a dispute about a minister's employment relationship, it was "governed by ecclesiastical rule and falls within the type of religious controversy in which courts do not intervene as mandated by the First Amendment." The Sixth Circuit agreed.  *Id.*  at *9.  It seconded the district court's reading of *Watson v. Jones,* 80 U.S. 679 (1872), where the Supreme Court had said courts must not adjudicate disputes "strictly and purely ecclesiastical in . . .character."  The instant dispute is not of such a character. This Court must abstain from deciding whether Barrow was properly removed from any volunteer clergy status he had or excluded from congregational membership.  But this is not the same as considering whether church members, clergy or not, violated Barrow's right to contract because of his race.

The Magistrate Judge again respectfully recommends that the Living Word Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be DENIED.

**Failure to State a Claim**

The Living Word Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(6) on grounds the Complaint and Second Amended Complaint are insufficiently factual under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Report found the Second Amended Complaint was sufficiently factual to satisfy the *Twombly/Iqbal* standard (ECF No. 57, PageID 417-23).

The Living Word Defendants object that the "*Twombly/Iqbal* plausibility standard applies to causation in discrimination claims." (Objections, ECF No. 68, PageID 511, *citing Han v. University of Dayton*, 541 Fed. Appx. 622, 626 (6th Cir. 2013)). That proposition is uncontroversial. The Living Word Defendants then proceed to criticize the Report because

> The Magistrate Judge recommended accepting Barrow's conclusory statements that actions of Living Word Defendants in contacting his publicist were "based on race" or "because of race" without any factual allegations to support that conclusion. See Report and Recommendation (ECF No. 57, PID 422-423). Barrow omits time frames or context for most alleged racial epithets. See proposed Second Amended Complaint (ECF No. 26-1), ¶¶ 38-41. He alleges no racial epithets made in any conversations with the publicist. Id. at ¶¶ 46, 47. He doesn't even allege when his publicist allegedly dropped him. Id. Mr. Barrow's amended complaints lack the factual bases to support any causal connection between any alleged racial animus and his loss of contracts through his publicist.

(Objections, ECF No. 68, PageID 512.)

To the contrary, the Second Amended Complaint alleges a number of instances in which Mr. and Mrs. Murray evinced racist attitudes in the relevant time period. The Second Amended Complaint connects those alleged racist attitudes to the interference with the book deal. See,

e.g., ECF No. 26-1, PageID 169, ¶ 46. It is certainly plausible in American society in the 21st century that persons who evince racist attitudes[1] will act on those attitudes. In the employment context, the federal courts have long accepted evidence of racial animosity by employment decision makers as evidence that an adverse employment decision was racially motivated. See *Hull v. Cuyahoga Valley Bd. of Ed.*, 926 F.2d 505, 514 (6th Cir. 1991), *citing McKnight v. General Motors Corp.*, 908 F.2d 104, 114 (7th Cir. 1990).

The detail that the Living Word Defendants seem to believe *Iqbal* and *Twombly* require would read the discovery process out of the Federal Rules and take us back to fact pleading. Such details as the dates on which Barrow's publicist dropped him or the dates on which racial epithets were uttered by relevant actors are proper matter for discovery, but their absence from the Second Amended Complaint does not make insufficiently plausible.

The Magistrate Judge again respectfully recommends the Motion to Dismiss be DENIED and this case be permitted to proceed to discovery.

July 25, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral

---

[1] Obviously the Court is not finding that any such attitudes exist on the part of the Living Word Defendants, but only that they have been alleged.

7

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).