IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAMUEL BARROW,                               :

    Plaintiff,

    v.                                       :      Case No. 3:15-cv-341

THE LIVING WORD CHURCH, *et*                        JUDGE WALTER H. RICE
*al.*,                                               MAGISTRATE JUDGE MICHAEL R. MERZ
                                         :

    Defendants.                          :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANTS THE LIVING WORD CHURCH, PAT MURRAY
AND JACKIE MURRAY'S (COLLECTIVELY THE "LIVING WORD
DEFENDANTS") OBJECTIONS (DOC. #68) TO THE MAY 3, 2016,
REPORT AND RECOMMENDATIONS THAT MOTION TO DISMISS BE
DENIED ("INITIAL REPORT AND RECOMMENDATIONS") (DOC. #57),
SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS OF
THE LIVING WORD DEFENDANTS (DOC. #92) TO THE JULY 25, 2016,
SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON THE
LIVING WORD DEFENDANTS' MOTION TO DISMISS, AND REPORT
AND RECOMMENDATIONS ON THE LIVING WORD DEFENDANTS'
RENEWED MOTION TO DISMISS ("SUPPLEMENTAL REPORT AND
RECOMMENDATIONS") (DOC. #84), RECOMMENDING THAT BOTH
THE INITIAL AND RENEWED MOTIONS TO DISMISS BE DENIED;
REJECTING SAID INITIAL (DOC. #57) AND SUPPLEMENTAL (DOC.
#84) REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE
MICHAEL R. MERZ; SUSTAINING IN PART AND OVERRULING
WITHOUT PREJUDICE IN PART MOTION TO DISMISS OF THE LIVING
WORD DEFENDANTS (DOC. #19), AND SUSTAINING IN PART AND
OVERRULING IN PART RENEWED MOTION TO DISMISS OF THE
LIVING WORD DEFENDANTS AS TO PLAINTIFF SAMUEL BARROW'S
SECOND AMENDED COMPLAINT (DOC. #71); PLAINTIFF'S CLAIM
UNDER 42 U.S.C. § 1981 AGAINST THE LIVING WORD DEFENDANTS
(COUNT I) IS DISMISSED WITHOUT PREJUDICE; PLAINTIFF WILL
HAVE TWENTY-ONE (21) DAYS FROM THE DATE OF THIS ENTRY
TO FILE AN AMENDED COMPLAINT, WITHIN THE STRICTURES OF
FED. R. CIV. P. 11; STATE LAW CLAIMS AGAINST THE LIVING WORD
DEFENDANTS (COUNTS II-VI) REMAIN PENDING BEFORE COURT

---

Plaintiff Samuel Barrow ("Plaintiff"), an African-American male, has filed a Second Amended Complaint against numerous defendants, including The Living Word Church, Pat Murray (a/k/a M. Patrick Murray) ("Pat") and Jackie Murray ("Jackie") (collectively the "Living Word Defendants"). Doc. #63. Plaintiff claims that the Living Word Defendants violated 42 U.S.C. § 1981 by interfering with his contractual and business relationships with third parties, allegedly because of his race. *Id.*, ¶¶ 64-68, PAGEID #478-79.

Pending before the Court, pursuant to Fed. R. Civ. P. 72(b), are: the Living Word Defendants' Motion to Dismiss Plaintiff's first amended complaint, Doc. #19; Magistrate Judge Michael R. Merz's Report and Recommendations that the Living Word Defendants' Motion to Dismiss be Denied ("Initial Report and Recommendations"), Doc. #57; the Living Word Defendants' Objections to the Initial Report and Recommendations, Doc. #68; the Living Word Defendants' Renewed Motion to Dismiss Plaintiff's Second Amended Complaint, Doc. #71; the Magistrate Judge's Supplemental Report and Recommendations on the Living Word Defendants' Motion to Dismiss, and Report and Recommendations on the Living Word Defendants' Renewed Motion to Dismiss ("Supplemental Report and Recommendations"), Doc. #84; and the Living Word Defendants' Objections to the Supplemental Report and Recommendations. Doc. #92.

Based upon the reasoning and citations set forth in both the Initial and Supplemental Report and Recommendations, as well as upon a thorough *de novo* review of the parties' memoranda and the applicable law, this Court REJECTS the Initial and Supplemental Reports and Recommendations. The Court SUSTAINS IN PART

AND OVERRULES IN PART the Living Word Defendants' Objections to said judicial filings, and SUSTAINS IN PART AND OVERRULES IN PART the Living Word Defendants' Motion to Dismiss and Renewed Motion to Dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff was a member of The Living Word Church, as was Antoinette Nartker ("Nartker"), whom Plaintiff hired as his typist. Doc. #63, ¶ 17, PAGEID #470. Plaintiff and Nartker's relationship soured, and Plaintiff alleges that Nartker and a Laura Moore ("Moore") "attacked [his] position as volunteer clergy at the Living Word [Church], incorrectly claiming that Mr. Barrow falsely represented his position in the church when working with inmates at local jails." Id., ¶ 31, PAGEID #471. Plaintiff met with the Living Word Defendants and Nartker on December, 19, 2013 (the "Meeting"), regarding Nartker and Moore's allegations. Id., ¶ 32. Plaintiff's attorney accompanied Plaintiff to the Meeting, as Plaintiff believed "that the meeting was originally business oriented." Id., ¶ 34, PAGEID #472. However, after listening to Nartker's accusations, the Living Word Defendants "ultimately indicated that Mr. Barrow was no longer deemed a member in good standing of Living Word." Id., ¶ 35. Plaintiff claims that, in doing so, the Living Word Defendants treated him less favorably than "a white minister [who] had made explicit videos but was appointed as Living Word's multi-media director," id., ¶ 43,

---

[1] The Living Word Defendants' Motions to Dismiss are brought under both Rule 12(b)(1) and 12(b)(6). Doc. #19, PAGEID #71; Doc. #71, PAGEID #530. For purposes of evaluating the Living Word Defendants' motions under Rule 12(b)(6), the Court must treat Plaintiff's well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, the Living Word Defendants' motions under Rule 12(b)(1) are "factual attack[s] on [the Court's] jurisdiction. . . . Under those circumstances, no presumption of truth attaches to the allegations of the Second Amended Complaint." Doc. #57, PAGEID #414 (citing Ogle v. Church of God, No. 04-6229, 153 F. App'x 371, 375 (6th Cir. 2005); Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).

PAGEID #473, and that such disparate treatment was consistent with a history of racial discrimination by the Living Word Defendants. *Id.*, ¶¶ 37-44, PAGEID #472-73.

Further, Plaintiff alleges that, after the Meeting, Pat, Jackie and Nartker:

> [D]iscussed contacting Mr. Barrow's literary agent to teach Mr. Barrow a lesson. Mrs. Murray stated that she had contacted the agent and others regarding the pending book deals to explain that Mr. Barrow had poor morals and was involved in explicit situations with females and males[, and] that other scandals would be released. These actions were taken based on Mr. Barrow's race.

Doc. #63, ¶ 47, PAGEID #474. Plaintiff claims that, as a result of Pat and Jackie's actions, his agent dropped him as a client, *id.*, ¶ 48, and he lost "several key [business] relationships and deals as a result of these actions." *Id.*, ¶ 62, PAGEID #478; *see also id.*, ¶ 67, PAGEID #478-79 (listing business relationships allegedly lost).

Plaintiff alleges that the Living Word Defendants violated 42 U.S.C. § 1981 (Count I) by "intentionally interfer[ing] with Mr. Barrow's right to contract based on his race." Doc. #63, ¶ 66, PAGEID #478. Further, Plaintiff has brought related state law claims against the Living Word Defendants of: tortious interference with business relationships (Count II), *id.*, ¶¶ 69-72, PAGEID #479; defamation (Count III), *id.*, ¶¶ 73-77, PAGEID #479-80; invasion of privacy (Count IV), *id.*, ¶¶ 78-81, PAGEID #480-81; intentional infliction of emotional distress (Count V), *id.*, ¶¶ 82-86, PAGEID #481; and civil conspiracy (Count VI). *Id.*, ¶¶ 87-90, PAGEID #482.

On November 23, 2015, the Living Word Defendants filed a motion to dismiss Plaintiff's first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). Doc. #19. On May 3, 2016, the Magistrate Judge issued a Decision and Order, granting Plaintiff leave to file a Second Amended Complaint, and the Initial Report and Recommendations, recommending that the motion to dismiss be denied. Doc. #57. On

4

May 19, 2016, Plaintiff filed his Second Amended Complaint. Doc. #63. On May 27, 2016, the Living Word Defendants filed Objections to the Initial Report and Recommendations, Doc. #68, and the matter was recommitted to the Magistrate Judge for consideration of the arguments raised by the Living Word Defendants. Doc. #69. On June 3, 2016, the Living Word Defendants filed a renewed motion to dismiss, based on the new allegations in the Second Amended Complaint, again pursuant to Rules 12(b)(1) and 12(b)(6). Doc. #71. On July 25, 2016, the Magistrate Judge issued a Supplemental Report and Recommendations, recommending that the Living Word Defendants' motions be denied and Plaintiff's claims, as pled in the Second Amended Complaint, be allowed to proceed. Doc. #84. The Living Word Defendants filed Objections to the Supplemental Report and Recommendations on August 11, 2016. Doc. #92. Plaintiff filed responses to the Initial and Supplemental Reports and Recommendations, but made no Objections. Doc. #75, 104.[2]

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing Fed. R. Civ. P. 12(b)(1). "[T]he party invoking federal jurisdiction has the burden to prove that [subject matter] jurisdiction [exists]." *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). If the Court determines that

---

[2] On August 12, 2016, the Court again recommitted the matter to the Magistrate Judge. Doc. #95. However, the recommittal order was vacated on August 24, 2016. Doc. #101.

it lacks jurisdiction over certain claims, then it must dismiss those claims. *See Ammex,*
*Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (quoting *Riggs v. Island Creek Coal Co.,*
542 F.2d 339, 343 (6th Cir. 1976)) ("parties cannot waive the requirement of subject
matter jurisdiction.").

    As the Living Word Defendants have raised a factual attack on the Court's
jurisdiction, "no presumptive truthfulness applies to the factual allegations" in the
Second Amended Complaint. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320,
325 (6th Cir. 1990). "The district court must therefore weigh the conflicting evidence to
arrive at the factual predicate that subject matter jurisdiction exists or does not exist."
*Id*.


    **B.    Rule 12(b)(6)**

    Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a
short and plain statement of the claim showing that the pleader is entitled to relief."  The
complaint must provide the defendant with "fair notice of what the . . . claim is and the
grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127
S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78
S.Ct. 99, 2 L.Ed.2d 80 (1957)).

    Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a
complaint on the basis that it "fail[s] to state a claim upon which relief can be granted."
The moving party "has the burden of showing that the opposing party has failed to
adequately state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.
2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  The purpose of a
Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of

law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id*. at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

III.    ANALYSIS

    A.    **Ecclesiastical Abstention Doctrine does not, in and of itself, Deprive this Court of Jurisdiction over Plaintiff's 42 U.S.C. § 1981 Claim**

The Living Word Defendants argue that the ecclesiastical abstention doctrine bars inquiry into what transpired at the Meeting, or into Plaintiff's allegations of disparate treatment by the Living Word Defendants vis-à-vis a similarly situated Caucasian assistant pastor. *See* Doc. #68, PAGEID #506; Doc. #71, PAGEID #530, 533-34; Doc. #92, PAGEID #691. The ecclesiastical abstention doctrine was aptly summarized in *Ogle v. Church of God*:

> The Supreme Court has held that in matters involving "questions of discipline, or of faith, or ecclesiastical rule, custom, or law[,]" the Free Exercise Clause requires that no civil court interfere with the determinations of the "highest of these church judicatories to which the matter has been carried." The Sixth Circuit has unambiguously stated that "the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy."

No. 04-6229, 153 F. App'x 371, 375 (6th Cir. 2005) (quoting *Watson v. Jones,* 80 U.S. 679, 727, 20 L. Ed. 666 (1871); *Lewis v. Seventh Day Adventists Lake Region Conference,* 978 F.2d 940, 942 (6th Cir. 1992); citing *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709-10, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1995); *Presbyterian Church v. Hull Church,* 393 U.S. 440, 449, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969); *Yaggie v. Ind.-Ky. Synod, Evangelical Lutheran Church,* No. 94-5892, 1995 WL 499468, at *3, 64 F.3d 664 (TABLE) (6th Cir. Aug. 21, 1995)).

In support, the Living Word Defendants have offered an affidavit by Pat, Doc. #19-1, in which he claims that the purpose of the Meeting was twofold. <u>First</u>, Pat was attempting to mediate the dispute between two parishioners, Plaintiff and Nartker. <u>Second</u>, he was investigating allegations of immoral conduct by Plaintiff, including

Plaintiff's supposed misrepresentation of himself as a clergyman for The Living Word Church. After the investigation, Pat stated, he would either make a decision regarding Plaintiff's status as a member of The Living Word Church, or report his factual findings to The Living Word Church's Elders or Board of Overseers. Doc. #92, PAGEID #696 (citing Doc. #19-1, ¶¶ 6-10, PAGEID #85-86). Pat, in his affidavit, averred that the Living Word Defendants' "interest in these allegations was solely pastoral—to determine the moral/immoral actions between church members." Doc. #19-1, ¶9, PAGEID #85. The Living Word Defendants argue that the ecclesiastical nature of both the Meeting and their decisions regarding Plaintiff and the Caucasian member deprives the Court of subject matter jurisdiction to review either the Meeting or the decisions, as "such intervention would excessively inhibit religious liberty in violation of the First Amendment," *Yaggie*, 1995 WL 499468, at *4 (citing *Lewis*, 978 F.2d at 942), specifically, the Free Exercise Clause. Doc. #92, PAGEID #692 (citing *Salzberger v. First Christian Church*, 65 Ohio App. 3d 368, 372, 583 N.E.2d 1361 (4th Dist. 1989)). Further, the Living Word Defendants claim, absent inquiry into the Meeting or the Living Word Defendants' decision regarding his status as a church member, Plaintiff has no basis for a 42 U.S.C. § 1981 claim. Doc. #68, PAGEID #512.

Plaintiff states that he "is not asking the Court to review [the] decision" by the Living Word Defendants that he is no longer a member in good standing. Doc. #26, PAGEID #156. Rather, Plaintiff claims, "the value of the investigation" into the Meeting "only provides some of the circumstantial evidence of Defendants' intentional interference with Plaintiff's private (and secular) business relationships and contracts based on his race." *Id.*, PAGEID #155. However, as the party asserting subject matter

jurisdiction, Plaintiff must go beyond simple disclaimers, and instead demonstrate that the Meeting was <u>not</u> solely ecclesiastical in nature. *Global Tech.*, 807 F.3d at 810. Plaintiff, in his Second Amended Complaint, alleges that "it was [his] understanding that the meeting was originally business oriented." Doc. #63, ¶ 34, PAGEID #472. However, with regard to a Rule 12(b)(1) jurisdictional motion, "no presumptive truthfulness applies to [Plaintiff's] factual allegations." *Ohio Nat'l*, 922 F.2d at 325. As Plaintiff has failed to offer any evidence, *e.g.*, via affidavit or supporting exhibits, suggesting that the meeting was secular in nature, he has not met his burden to show that jurisdiction exists. Thus, the Court is barred from considering discussions that took place during the Meeting or any disparate treatment of Plaintiff vis-à-vis the Caucasian member.[3]

However, the Court's inquiry does not end there. Plaintiff may attempt to make a 42 U.S.C. § 1981 claim via "direct evidence of racial discrimination." *Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club*, No. C-3-98-260, 2003 WL 25566103, at *7 (S.D. Ohio Sept. 2, 2003) (Rice, C.J.). Plaintiff alleges that, subsequent to the Meeting, Pat and Jackie undertook actions aimed at inducing Plaintiff's agent to drop him as a client, and to induce persons with whom Plaintiff had pending contracts or business relationships to sever their relationships with him. Doc. #63, ¶¶ 47-48, 62, 67,

---

[3] In the Supplemental Report and Recommendations, the Magistrate Judge correctly stated that "[i]f a church meeting is used as a place to plan to commit torts involving third parties[,] . . . ecclesiastical abstention will not shield the occurrences in the meeting from secular court consideration." Doc. #84, PAGEID #638. However, the allegations of interference with Plaintiff's business relationships center on actions taken <u>after</u> the Meeting. Similarly, Plaintiff's argument that the exception to the ecclesiastical abstention doctrine "that allows for inquiry into ecclesiastical matters where a church acts 'in bad faith for secular purposes,'" Doc. #26, PAGEID #156 (quoting *Ogle*, 153 F. App'x at 376), does not apply. Plaintiff has proffered no evidence supporting his claim that "Defendants' motivation [in holding the Meeting] appears to have been for the secular purpose of destroying Mr. Barrow's career and personal life based on his race." *Id.* Thus, there are no secular considerations that justify inquiring into the Meeting.

PAGEID #474, 478-79.  Further, Plaintiff claims that the Living Word Defendants'

actions were undertaken because of Plaintiff's race, id., ¶ 66, PAGEID #478, and that

the Living Word Defendants had exhibited a longstanding pattern of animus toward

African-Americans.  Id., ¶¶ 37-44, PAGEID #472-73.[4]  The Magistrate Judge correctly

concluded that the Court's "abstain[ing] from deciding whether Barrow was properly

removed from any volunteer clergy status he had or excluded from congregational

membership . . . is not the same as considering whether church members, clergy or not,

violated Barrow's right to contract because of his race."  Doc. #84, PAGEID #639.  The

Living Word Defendants cannot reasonably claim that the ecclesiastical abstention

doctrine bars any inquiry into the Living Word Defendants' actions taken <u>after</u> the

Meeting, which were not ecclesiastical in nature.

    As discussed in greater detail below, Plaintiff still must plead facts that, taken

together, set forth a plausible claim of intentional interference with his right to contract,

and that said interference was undertaken due to racial animus.  Nonetheless, the Court

has jurisdiction over any such claim.  The Living Word Defendants' Objections to the

Initial and Supplemental Reports and Recommendations, Doc. #68, 92, are sustained

with respect to the ecclesiastical abstention doctrine barring inquiry into the Meeting or

any decision regarding Plaintiff or the unnamed Caucasian member's status within The

Living Word Church.  Their Objections are overruled with respect to the Court's overall

subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1981 claim.  Accordingly, the

---

[4] For the purposes of the Living Word Defendants' Rule 12(b)(1) motions, the Court does not presume Plaintiff's allegations to be true.  Rather, the Court cites those allegations to show that Plaintiff's claim under 42 U.S.C. § 1981 is not based solely on the Meeting or decisions taken by the Living Word Defendants with respect to Plaintiff's standing as a member of The Living Word Church.

Living Word Defendants' motion and renewed motion to dismiss, Doc. #19, 71, are overruled to the extent they are brought under Rule 12(b)(1).

### B. Plaintiff has not Pled a Plausible Claim Under 42 U.S.C. § 1981

The Living Word Defendants argue that Plaintiff has set forth "no facts that would allow the court to infer that any alleged interference of these defendants with his existing relationship with his literary agent through their contact with that literary agent was the result of his race." Doc. #19, PAGEID #80. Nor, their argument continues, has Plaintiff alleged "facts to support [that] he was prevented from entering into an otherwise available contractual or business relationship by these defendants." *Id.* As Plaintiff had failed to set forth facts sufficient to satisfy the major elements of a 42 U.S.C. § 1981 claim, the Living Word Defendants argue, the claim should be dismissed. *Id.*, PAGEID #81.

"The two major elements of a successful § 1981 claim follow from the statute's language. First, the plaintiff must possess some contractual right that the defendant blocked or impaired. . . . Second, the plaintiff has to demonstrate that racial discrimination drove the decision to interfere with these contractual rights." *Williams v. Richland Cnty. Children Servs.*, No. 11-4205, 489 F. App'x 848, 851 (6th Cir. 2012) (citing *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006)). "[S]ection 1981 proscribes not only discrimination by the contracting party at the contract-formation stage but also discriminatory interference by a third party with the exercise of the right to make contracts." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 965 n.25 (S.D. Ohio 2000) (Rice, C.J.) (quoting *Vakharia v. Swedish Covenant Hosp.*, 765 F. Supp. 461, 471 (N.D. Ill. 1991)).

In the Initial Report and Recommendations, the Magistrate Judge noted the following allegations: Plaintiff is African-American; he had a contract with a literary agent and several other key business relationships; he lost the contract and relationships as a result of the Living Word Defendants' actions; and Living Word Defendants used racial epithets and made other discriminatory statements. Doc. #57, PAGEID #422-23 (citations omitted). Taken together, the Magistrate Judge concluded, Plaintiff had "provid[ed] at least inferential proof of racial animus", *id*., PAGEID #423 (citations omitted), and that "a jury could reasonably infer that Defendants' claim that they reported Barrow's conduct to his literary agent because of his sexual misconduct is a pretext for interfering with his contractual rights because he is black." *Id*. Accordingly, he recommended that the Living Word Defendants' motion to dismiss be denied. *Id*.

The Living Word Defendants raise two main Objections with respect to the above portion of the Initial Report and Recommendations.[5] The Court addresses each Objection in turn.

> **1.** **Plaintiff has Pled a Sufficient Causal Connection between the Living Word Defendants' Alleged Animus and their Interference with his Contractual Rights**

The Living Word Defendants claim that Plaintiff did not set forth a causal connection between the Living Word Defendants' alleged racial animus and the loss of any contracts or business relationships, and that Plaintiff's allegations that the actions of the Living Word Defendants were "based on race" were mere legal conclusions that the

---

[5] The Living Word Defendants' Objections to the Supplemental Report and Recommendations concerned only the ecclesiastical abstention doctrine. Doc. #92.

Court need not accept as true. Doc. #68, PAGEID #511-12 (citing *Han v. Univ. of Dayton*, No. 13-3048, 541 F. App'x 622, 627 (6th Cir. 2013); *Iqbal*, 556 U.S at 678). Absent such a causal connection, the Living Word Defendants argue, Plaintiff is left with only bare legal conclusions, which are insufficient for a viable claim under 42 U.S.C. § 1981. Doc. #68, PAGEID #511, 512 (citing *Twombly*, 550 U.S. at 555; *McDonald*, 546 U.S. at 476).

Contrary to the Living Word Defendants' assertion, Plaintiff's Second Amended Complaint[6] goes beyond mere legal conclusions. As discussed above, Plaintiff set forth several instances of alleged racial animus by the Living Word Defendants. Doc. #63, ¶¶ 37-44, PAGEID #472-73. Further, he claims that, as a result of Pat and Jackie's alleged actions, he was dropped by his agent and lost several key business relationships. *Id.*, ¶¶ 48, 62, 67, PAGEID #474, 478-79. The Second Amended Complaint permits the reasonable inference that Pat and Jackie's alleged interference with Plaintiff's current and prospective contracts was due to his race, and that those contracts and relationships were impaired by their interference. Finally, as the Magistrate Judge stated in the Supplemental Report and Recommendations, "[s]uch details as the dates on which Barrow's publicist dropped him or the dates on which racial epithets were uttered by relevant actors are proper matter for discovery, but their absence from the Second Amended Complaint does not make [the complaint] insufficiently plausible." Doc. #84, PAGEID #641. The Court agrees, and the Living Word Defendants' First Objection is overruled.

---

[6] The Initial Report and Recommendations analyzed Living Word Defendants' motion to dismiss using the then-proposed Second Amended Complaint. Doc. #57, PAGEID #417-23. Moreover, Plaintiff made very similar allegations in the first amended complaint, Doc. #2, ¶¶ 36-43, 46-47, 60-61, PAGEID #24-26, 27-28, and, thus, the Court's conclusion below would have been the same even if leave to amend had not been granted.

**2.    Plaintiff has not Pled a Viable Claim under 42 U.S.C. § 1981 Based on the Living Word Defendants' Alleged Interference**

**a.    Living Word Defendants' Argument**

The Living Word Defendants argue that a 42 U.S.C. § 1981 claim should be allowed to proceed only if "the parties sought to enter into a wholly new contractual relationship," as the statute does not "guarantee[] federal protection against another party's breach of, or interference with, an existing, partially executed contract." Doc. #19, PAGEID #81 (citation omitted).  Further, the Living Word Defendants claim that the Magistrate Judge erred in relying on *Baseball at Trotwood* for his finding that "this Court has already held that tortious interference with a contract can give rise to a § 1981 cause of action."  Doc. #68, PAGEID #512 (quoting Doc. #57, PAGEID #421).  Rather, the Living Word Defendants argue that "in this district, and in the Sixth Circuit, . . . it has not yet been decided whether a plaintiff has a cause of action under § 1981 against a third party for interference with the plaintiff's right to make and enforce contracts." *Id.*, PAGEID #513 (citation omitted).

**b.    Scope of Relief under 42 U.S.C. § 1981**

With respect to the Living Word Defendants' first argument, the Civil Rights Act of 1991 amended 42 U.S.C. § 1981 to define the statutory right to "'make and enforce contracts' to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (quoting 42 U.S.C. § 1981(b)).  Accordingly, with respect to interference with contracts

that had not yet been entered into <u>and</u> those contracts that were partially executed, Plaintiff may seek relief under 42 U.S.C. § 1981.

          **c.**      **42 U.S.C. § 1981 Claim Based on Tortious Interference is Actionable in this Court, but Plaintiff has not Stated a Claim for Relief**

The remainder of the Living Word Defendants' argument presents two issues: (1) whether a 42 U.S.C. § 1981 claim based on tortious (or third party) interference may be brought at all in this Court; and (2) if so, whether Plaintiff has set forth, by the facts alleged in the Second Amended Complaint, a plausible claim for relief. While the Living Word Defendants are correct that the first issue remains an open question in the Sixth Circuit, courts in a majority of the other Circuits have reached the issue and have allowed such claims to proceed.[7]  Moreover, in *dicta*, the Sixth Circuit has noted with approval other courts' allowing claims under 42 U.S.C. § 1981 based on tortious interference. *Hayes v. City of Memphis*, No. 00-6271, 23 F. App'x 529, 531 (6th Cir. 2001) (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)[8]; *Herron v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers Local Union 25*,

---

[7] *See, e.g.*, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350-351 (4th Cir. 2013); *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 914-16 (7th Cir. 1991); *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir. 1981), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013); *Shirkey v. Eastwind Comm'y Devel. Corp.*, 941 F. Supp. 567, 573-74 (D. Md. 1996). While the Fifth Circuit has expressed doubt as to "whether a plaintiff has a cause of action under section 1981 against a third party for interference with the plaintiff's right to make and enforce contracts," *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086-87 (5th Cir. 1994), it has not held that such a cause of action was barred.

[8] The plaintiff in *Hayes* brought claims under 42 U.S.C. §§ 1983, 1985(3) and 1986, but not under 42 U.S.C. § 1981.  23 F. App'x at 530.

Nos. 96-1335, 96-1411, 1998 WL 45483, at *5 134 F.3d 371 (TABLE) (6th Cir. Jan. 27,

1998) (citing *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 945 F.2d 911, 923-24

(7th Cir. 1991)).  The *Herron* Court went so far as to assume that a claim based on

tortious interference would be viable under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-2(c), or 42 U.S.C. § 1981.  1998 WL 45483, at *5 (citation omitted).

Given the consensus among other Circuits that a 42 U.S.C. § 1981 claim based

on tortious interference is viable, and the Sixth Circuit's favorable treatment in *dicta* of

the holdings in those other Circuits, it is likely that the Sixth Circuit would allow such a

claim to proceed.  Thus, Plaintiff's claim under 42 U.S.C. § 1981 would be actionable in

this Court, provided that he could set forth facts that add up to a plausible claim for

relief.  However, Plaintiff has not done so.

Courts have allowed 42 U.S.C. § 1981 claims based on tortious interference to

proceed under three fairly narrow circumstances, all of which are readily distinguishable

from Plaintiff's allegations.  <u>First</u>, the court in *London* held that a plaintiff's claim under

42 U.S.C. § 1981 was actionable against his former employer who, allegedly motivated

by racial resentment, sent an adverse reference to a potential future employer.  644

F.2d at 818.  However, the Court is unaware of *London* being applied outside of that

narrow context, which is inapplicable to this case; Plaintiff does not allege that an

employer-employee relationship existed between the Living Word Defendants and

himself.

<u>Second</u>, courts have allowed a claim when the defendant is so closely

intertwined with the third party with which a plaintiff seeks to contract that the defendant

"cannot credibly claim an attenuated and distant relationship" between its discriminatory

actions and the adverse action taken by a third party. *Shirkey v. Eastwind Comm'y Dev. Corp.*, 941 F. Supp. 567, 573-74 (D. Md. 1996). In *Shirkey*, the defendant church organization funded the third party non-profit to which the plaintiff applied for employment, and allegedly promulgated the racially discriminatory policy that prevented the plaintiff from being hired. *Id.* at 570, 571. The Court found that the church was a proper defendant under 42 U.S.C. § 1981 because "the policy at issue" that allegedly interfered with the plaintiff's right to contract "has been directly attributed to [the church organization]." *Id.* at 574. However, in the Second Amended Complaint herein, Plaintiff does not allege that any relationship existed between the Living Word Defendants and Plaintiff's agent or his actual or prospective business partners. He certainly does not claim that the Living Word Defendants possessed any control over those third parties' dealings with Plaintiff.

Third, such claims have been allowed when a defendant "both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002). In most instances, the defendant has exercised that authority against the plaintiff. In *Daniels*, the plaintiff, an African-American, belonged to the defendant union, which operated a job referral service. As part of the service, third parties in need of welding or pipefitting services would call the union, which would then refer union members to the third parties for contracting. 945 F.2d at 911. Plaintiff alleged that the union was engaging in racially discriminatory referrals, and thus interfering with his right to contract with those third parties. The Court allowed the 42 U.S.C. § 1981 claim to proceed, as the union's

"job referral service was the primary mechanism through which contractors hired union employees . . . [i]n essence, no referral meant no job and no opportunity for union members to enter into employment contracts with [third party] employers." *Id.* at 914; *see also: Morrison v. Am. Bd. of Psychiatry & Neurology*, 908 F. Supp. 582, 588 (N.D. Ill. 1996) (Defendant's alleged refusal to grant board certification was concrete interference with plaintiff's right to contract with patients, as "many medical facilities and private patients make Board certification a prerequisite to employment."); *Vakharia*, 765 F. Supp. at 471-72 (hospital removing plaintiff doctor from call schedule and limiting the number of patients she could see foreclosed her ability to contract with patients).  In contrast, Plaintiff does not allege that the Living Word Defendants, within the context of a business or other secular relationship with him, took any action that interfered with his right to contract.

Rather, Plaintiff alleges that the Living Word Defendants, motivated by racial animus and with the intent to destroy his business, "contacted [Plaintiff's] agent and others regarding the pending book deals to explain that Mr. Barrow had poor morals and was involved in explicit situations." Doc. #63, ¶ 47, PAGEID #474.  Courts have held that such statements to unrelated third parties—even if they result in the loss of actual or potential business—do not by themselves give rise to a cause of action under 42 U.S.C. § 1981.  In *Painter's Mill Grille, LLC v. Brown*, the plaintiff sued two of the lawyers representing the plaintiff's landlord, alleging that the lawyers told the prospective buyers of plaintiff's business "that they did not want another 'chicken and waffle shack' at the site and made derogatory comments about the restaurant and its customers." 716 F.3d 342, 350 (4th Cir. 2013).  The Fourth Circuit held that such

19

comments, even if they resulted in the prospective buyers "breach[ing] their written contract for the purchase of the business," were insufficient to state a claim under 42 U.S.C. § 1981, as "the complaint does not allege that [the lawyers] 'possessed sufficient authority to significantly interfere' with Painter's Mill Grille's contract to sell its business. In addition, no allegations are made that [the lawyers] were <u>exercising</u> that <u>authority</u> when making those remarks." *Id*. at 351 (emphasis in original) (quoting *Harris*, 300 F.3d at 1197); *accord*: *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (emphasis in original) (with respect to potential business opportunities, even if statements "defamed [plaintiff] and thus arguably made him less attractive to some who otherwise might want to contract with him, the defamation does not deny him the basic <u>right</u> to contract.").

Plaintiff does not allege that the Living Word Defendants had any authority or control over his business dealings, or those dealings of his agent or prospective business partners, such that an exercise of that authority would have prevented him from entering or fulfilling into contracts with those third parties. In fact, by alleging that "[t]he actual purpose of the [M]eeting was for [the] Living Word [Defendants] to <u>convince</u> Mr. Barrow to give Ms. Nartker 50% of his business," Doc. #63, ¶ 36, PAGEID #472 (emphasis added), he appears to concede that the Living Word Defendants did <u>not</u> have such authority. In light of the narrow circumstances under which 42 U.S.C. § 1981 claims based on tortious interference have been allowed, Plaintiff's failure to make such allegations is fatal to his claim. Accordingly, the Living Word Defendants' second Objection is sustained, and Plaintiff's 42 U.S.C. § 1981 claim against Living Word Defendants must be dismissed.

IV.    **COURT WILL CONTINUE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER RELATED STATE LAW CLAIMS**

The Living Word Defendants argue that, "[b]ecause Mr. Barrow fails to establish any actionable federal claim against these Defendants, this Court should decline jurisdiction over any remaining state law claims against these defendants." Doc. #19, PAGEID #82.  As Plaintiff's claim under 42 U.S.C. § 1981 against Nartker remains pending, the Court will continue to exercise its supplemental jurisdiction over the remaining state law claims, in "the interests of judicial economy and the avoidance of multiplicity of litigation." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotation marks and citation omitted).  Accordingly, the Living Word Defendants' motions to dismiss are overruled without prejudice with respect to Plaintiff's state law claims, subject to renewal if the Court sustains Nartker's motion to dismiss, which is currently pending before the Court.  Doc. #49.


V.    **CONCLUSION**

For the foregoing reasons, the Court REJECTS the Magistrate Judge's May 3, 2016, Initial Report and Recommendations, Doc. #57, and July 25, 2016, Supplemental Report and Recommendations.  Doc. #84.  Defendants The Living Word Church, Pat Murray and Jackie Murray's Objections to the Initial and Supplemental Reports and Recommendations, Doc. #68, 92, are SUSTAINED with respect to the Meeting and any comparison between the Living Word Defendants' treatment of Barrow's as a member of The Living Word Church vis-à-vis a comparably situated Caucasian member. Further, the Living Word Defendants' Objections to the Initial Report and Recommendations, Doc. #68, are SUSTAINED with respect to whether Plaintiff has set

forth a claim upon which relief can be granted, and are OVERRULED with respect to the Court's overall subject matter jurisdiction and whether a cause of action for tortious interference exists under 42 U.S.C. § 1981.  The Living Word Defendants' initial and renewed motions to dismiss, Doc. #19, 71, are SUSTAINED IN PART with respect to Plaintiff's claim under 42 U.S.C. § 1981 (Count I), which is dismissed without prejudice. Plaintiff shall have twenty-one (21) days from the date of this entry in which to file an amended complaint, subject, of course to the requirements of Rule 11.  Their motions are OVERRULED WITHOUT PREJUDICE IN PART with respect to Plaintiff's state law claims (Counts II-VI) against the Living Word Defendants, which remain pending before the Court.


Date: September 16, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE