IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAMUEL BARROW,

    Plaintiff,

v.

LIVING WORD CHURCH, *et al.*,

    Defendants.

Case No. 3:15-cv-341

JUDGE WALTER H. RICE

MAGISTRATE JUDGE MICHAEL R. MERZ

---

DECISION AND ENTRY OVERRULING PLAINTIFF SAMUEL BARROW'S OBJECTIONS (DOC. #100) TO THE REPORT AND RECOMMENDATIONS THAT THE MOTION TO DISMISS OF DEFENDANTS CASHLAND FINANCIAL SERVICES, INC., CASH AMERICA INTERNATIONAL, INC., AND JACK DAUGHERTY (COLLECTIVELY THE "CASHLAND DEFENDANTS") BE SUSTAINED ("CASHLAND DEFENDANTS REPORT AND RECOMMENDATIONS") (DOC. #87); OVERRULING PLAINTIFF'S OBJECTIONS (DOC. #107) TO THE REPORT AND RECOMMENDATIONS THAT THE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT ABF FREIGHT SYSTEMS, INC., BE SUSTAINED ("ABF REPORT AND RECOMMENDATIONS") (DOC. #98); ADOPTING IN PART AND REJECTING IN PART SAID CASHLAND DEFENDANTS (DOC. #87) AND ABF (DOC. #98) REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE MICHAEL R. MERZ IN THE MANNER SET FORTH HEREIN; SUSTAINING CASHLAND DEFENDANTS' MOTION TO DISMISS (DOC. #70) AND ABF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #81); PLAINTIFF'S CLAIMS IN THE SECOND AMENDED COMPLAINT (DOC. #63) AGAINST THE CASHLAND DEFENDANTS AND ABF FOR INVASION OF PRIVACY (COUNT IV) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V) ARE DISMISSED WITH PREJUDICE AS AGAINST DAUGHERTY AND WITHOUT PREJUDICE AS AGAINST CASHLAND, CASH AMERICA AND ABF; PLAINTIFF WILL HAVE THIRTY (30) DAYS FROM THE DATE OF THIS ENTRY TO FILE AN AMENDED COMPLAINT AGAINST CASHLAND, CASH AMERICA AND ABF; JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DAUGHERTY AND AGAINST PLAINTIFF ON COUNTS IV AND V

Plaintiff Samuel Barrow ("Plaintiff") has filed a Second Amended Complaint against numerous defendants, including Cashland Financial Services, Inc. ("Cashland"), Cash America International, Inc., Cashland's alleged parent company ("Cash America"), and Jack Daugherty ("Daugherty"), Cash America's Founder and Chairman of the Board (collectively the "Cashland Defendants"), and ABF Freight Services, Inc. ("ABF"). Plaintiff has brought claims against the Cashland Defendants and ABF only for invasion of privacy (Count IV) and intentional infliction of emotional distress (Count V). Doc. #63, ¶¶ 78-86, PAGEID #480-81.

Pending before the Court, pursuant to Rule 72(b), are: the Cashland Defendants' Motion to Dismiss (the "Cashland Defendants Motion"), Doc. #70; ABF's Motion for Judgment on the Pleadings ("ABF Motion"), Doc. #81; Magistrate Judge Michael R. Merz's Report and Recommendations on the Cashland Defendants Motion (the "Cashland Defendants Report and Recommendations"), Doc. #87; Plaintiff's Objections to the Cashland Defendants Report and Recommendations, Doc. #100; the Magistrate Judge's Report and Recommendations on the ABF Motion ("ABF Report and Recommendations"), Doc. #98; and Plaintiff's Objections to the ABF Report and Recommendations. Doc. #107.

Based upon the reasoning and citations set forth in both Reports and Recommendations, as well as upon a thorough *de novo* review of the parties' memoranda and the applicable law, this Court REJECTS the Cashland Defendants and ABF Reports and Recommendations as to their recommendations that claims against Cashland, Cash America and ABF be dismissed with prejudice. The Court ADOPTS

said judicial filings in all other respects, OVERRULES Plaintiff's Objections thereto and SUSTAINS the Cashland Defendants and ABF Motions.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff, an author and a member and volunteer clergyperson at The Living Word Church, alleges that he hired Antoinette Nartker ("Nartker"), an ABF employee and fellow member of The Living Word Church, as his typist on a contract basis. Doc. #63, ¶¶ 17, 49(a), PAGEID #470, 474. Plaintiff and Nartker's relationship later soured, and Plaintiff claims that Nartker "rifle[d] through Mr. Barrow's personal electronic files and found a private video depicting Mr. Barrow having sex." *Id.* ¶ 23, PAGEID #470. Further, Plaintiff alleges that Nartker and a Laura Moore ("Moore") threatened "to release the sex video to Mr. Barrow's business contacts and [The] Living Word [Church]." *Id.*, ¶ 28, PAGEID #471; *see also id.*, ¶ 49(b), PAGEID #475 (alleging that Moore is a Cashland employee).

Nartker and Moore subsequently created a betting pool, which pertained to "what would happen upon the release of the sex video by Ms. Nartker and Ms. Moore." Doc. #63, ¶ 50, PAGEID #475. "During business hours and at [] their respective places of business," Nartker and Moore allegedly "distributed the betting pool and acted as the facilitators of the betting pool for employees of the companies[,] and circulated the betting pool in hard copy and via email to other employees." *Id.*, ¶ 49(d). Nartker and Moore were aided in their distribution of the betting pool by certain ABF and Cashland

---

[1] For purposes of evaluating Cashland Defendants' Motion under Rule 12(b)(6) and ABF's Motion under Rule 12(c), the Court must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

3

employees. *Id.*, ¶¶ 51-52, PAGEID #475-76.  Upon being informed by unnamed acquaintances about the betting pool, Plaintiff complained to several executive officers of Cashland, Cash America and ABF, including Daugherty. *Id.*, ¶¶ 55-56, PAGEID #476-77.  However, Plaintiff alleges that Daugherty and other Cashland, Cash America and ABF managers and executives found the pool humorous, thought that it promoted camaraderie among their employees, and "intentionally allowed the betting pool to continue within their respective companies." *Id.*, ¶ 57, PAGEID #477.  "Cashland and/or Cash America also sent Mr. Barrow a letter refusing to address the concerns Mr. Barrow had raised.  ABF never responded in writing to Mr. Barrow's inquiries." *Id.*  Subsequently, however, Daugherty, in a phone call with Moore, expressed concerns about "'that nigger' Al Sharpton [becoming involved] should the matter [of the betting pool] escalate[,] such that Cash America's ability to issue payday loans to minorities might be impacted." *Id.*, ¶ 58.

Plaintiff claims that Cashland, Cash America and ABF, through "their refusal to do anything about the betting pool following complaints while at the same time viewing it as humorous . . . ratified the racially-motivated betting pool such that they are responsible for the actions and consequences of their employees." Doc. #63, ¶ 59, PAGEID #477.  Finally, Plaintiff alleges that, as a result of the betting pool continuing, he "suffered severe emotional distress that continues to require medical treatment." *Id.*, ¶ 85, PAGEID #481.

On September 28, 2015, Plaintiff filed his first amended complaint.  Doc. #2.  On December 18, 2015, the Cashland Defendants moved to dismiss the complaint.  Doc. #27.  On December 28, 2015, ABF answered that complaint.  Doc. #29.  On May 5,

4


2016, the Magistrate Judge issued a Report and Recommendations, recommending that Plaintiff's claims against the Cashland Defendants be dismissed "unless Plaintiff files an amended complaint curing the pleading deficiencies." Doc. #58, PAGEID #433.

On May 19, 2016, Plaintiff filed the Second Amended Complaint, raising claims of invasion of privacy (Count IV) and intentional infliction of emotional distress (Count V) against the Cashland Defendants and ABF. Doc. #63. On June 2, 2016, the Cashland Defendants filed their current Motion, Doc. #70. On June 6, 2016, ABF answered the Second Amended Complaint, Doc. #73, and on July 1, 2016, filed its current Motion. Doc. #81. On August 3, 2016, the Magistrate Judge issued the Cashland Defendants Report and Recommendations, recommending that the Cashland Defendants' Motion be sustained, and that Plaintiff's claims against them be dismissed with prejudice. Doc. #87. On August 22, 2016, the Magistrate Judge issued the ABF Report and Recommendations, recommending that its Motion be sustained, and that Plaintiff's claims against it be dismissed with prejudice. Doc. #98. Plaintiff filed Objections to the Cashland Defendants and ABF Reports and Recommendations. Doc. #100, 107. The Cashland Defendants and ABF filed memoranda in opposition to Plaintiff's Objections, but made no Objections themselves. Doc. #106, 110.

## II.  LEGAL STANDARDS

### A.  Rules 12(b)(6) and 12(c)

Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."

5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6)." *Wurzelbacher v. Jones-Kelly*, 728 F. Supp. 2d 928, 931 (S.D. Ohio 2010) (Marbley, J.) (citing *Ziegler v. IBP Hog Mkt.. Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line

6

from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id*. at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### B. Invasion of Privacy

Plaintiff's invasion of privacy claim is based upon the Cashland Defendants and ABF's alleged intrusion upon his seclusion. "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability . . . if the intrusion would be highly offensive to a reasonable person." *Sustin v. Fee*, 69 Ohio St. 2d 143, 145, 431 N.E.2d 992 (1982) (citation omitted).

### C. Intentional Infliction of Emotional Distress

To sustain a claim for intentional infliction of emotional distress, Plaintiff must plausibly allege "that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional

7

distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666 (1983) (internal quotation marks and citation omitted), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464, 2007-Ohio-2451, 866 N.E.2d 1051.

### D.    Ratification

Plaintiff's invasion of privacy and intentional infliction of emotional distress claims against Cashland, Cash America and ABF are premised on the theory that those companies ratified the intentional torts of their employees, including but not limited to Nartker and Moore, and thus are themselves liable to Plaintiff. Doc. #63, ¶ 59, PAGEID #477. "[W]hen an employee commits an intentional tort, it is assumed that the employee did not act within the course and scope of employment, for intentional torts generally encompass bad acts which have no place in the employment relation." *Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189, ¶ 4 (citing *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991)). However, an employer may be liable for those torts if an individual with the authority to bind the employer, through his words and actions after becoming aware of the employee's intentional tort, "ratifies the employee's act, in essence adopting it as the employer's own." *Id.*, ¶ 5. While "the law has long

8

rejected the notion of ratification by silence," *id.*, ¶ 5 (citing *Lanning v. Brown*, 84 Ohio St. 385, 392, 95 N.E. 921 (1911)), "the current view is that silence can sometimes express intent as loudly as words. There are situations where one would expect a principal to act, and thus the failure to act can be viewed as a manifestation of intent to ratify the agent's act." *Id.*, ¶ 6 (citation omitted).

### III. ANALYSIS

#### A. Plaintiff has Failed to Allege a Plausible Claim Against Daugherty

Plaintiff alleges that, upon finding out about the betting pool, he complained about the pool to Daugherty. Doc. #63, ¶¶ 9, 55, PAGEID #468, 476. Daugherty supposedly found the betting pool humorous and, concluding that it promoted camaraderie among Cashland and Cash America employees, allowed it to continue. *Id.*, ¶ 57, PAGEID #477. Subsequently, Plaintiff claims, Daugherty called Moore and, during the call, referred to Al Sharpton as "that nigger." *Id.*, ¶ 58. Plaintiff claims that Daugherty, through the above, invaded his privacy, *id.*, ¶80(g), PAGEID #481, and caused him severe emotional distress. *Id.*, ¶ 85.

Plaintiff's invasion of privacy claim is belied by his allegation that <u>he</u> informed <u>Daugherty</u> of the betting pool. Doc. #63, ¶ 55, PAGEID #476. Plaintiff's decision to do so renders implausible any claim that Daugherty intentionally intruded upon Plaintiff's private affairs or concerns. *Sustin*, 69 Ohio St. 2d at 145. Thus, Count IV must be dismissed as against Daugherty.

Moreover, the facts alleged in the Second Amended Complaint do give rise to a plausible intentional infliction of emotional distress claim as against Daugherty. The premise of Plaintiff's claim is that Daugherty, in a conversation with Moore, allegedly

9

used a racial epithet about Al Sharpton. Doc. #63, ¶ 58, PAGEID #477. On its face, Daugherty's statement, while deplorable, is not conduct against Plaintiff at all, much less conduct that was "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized community.'" *Yeager*, 6 Ohio St.3d at 375. Plaintiff makes no allegations that would enable Daugherty's statement to meet that exacting standard, and dismissal for that reason alone is appropriate. *See Miller*, 50 F.3d at 377-78 ("[i]t is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with on . . . a motion to dismiss."). Also, Plaintiff does not allege that he was present for the conversation between Daugherty and Moore; nor does he allege that Daugherty informed him of the conversation's subject matter. Therefore, any emotional distress suffered by Plaintiff could not have been proximately caused by any direct comment or conduct by Daugherty. As Plaintiff has failed to plead a plausible intentional infliction of emotional distress claim against Daugherty, *id*., 50 F.3d at 377, Count V as against him must be dismissed.

The Second Amended Complaint was Plaintiff's second attempt to assert claims against Daugherty in his individual capacity. Both times, he fell well short of setting forth plausible claims for relief either for invasion of privacy or intentional infliction of emotional distress. Also, there is nothing in the Second Amended Complaint or the parties' filings that suggests that any further amended pleading could survive a renewed motion to dismiss. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted) ("[C]ourts need not give leave to amend when doing so would be futile. Amending would be futile if a proposed amendment would not

10

survive a motion to dismiss."). Accordingly, Counts IV and V as against Daugherty are dismissed with prejudice.

### B. Plaintiff has not Plausibly Alleged that Cashland, Cash America or ABF Ratified Their Employees' Alleged Intentional Torts

Plaintiff alleges that the betting pool was created and circulated by Nartker, Moore and other Cashland and ABF employees. Doc. #63, ¶¶ 49, 51-53, PAGEID #474-76. Further, Plaintiff claims that despite his complaints about the betting pool to Cash America, Cashland and ABF executives, those executives intentionally allowed it to continue, concluding that the betting pool was humorous and promoted camaraderie. *Id.*, ¶ 57, PAGEID #477. Plaintiff argues that the inaction of Cashland, Cash America and ABF managers and executives, when a reasonable person would have acted to stop the betting pool, constituted acceptance of the benefit of increased camaraderie and ratification of the pool. Doc. #100, PAGEID #752; *see also Amato*, 2005-Ohio-189, ¶ 8 (quoting *Brooks v. Bell*, 1st Dist. Hamilton Nos. A-9602497, C-970548, 1998 WL 165024, at *5 (Apr. 10, 1998) ("If a principal is fully aware of the agent's unauthorized act and . . . retains the benefits of the act, the principal has ratified the act."). Consequently, Plaintiff claims, Nartker and Moore's invasion of Plaintiff's privacy and intentional infliction of emotional distress can be imputed to them. Doc. #82, PAGEID #629-30; Doc. #86, PAGEID #655.

The Second Amended Complaint suffers from two flaws that are fatal to his claims against Cashland, Cash America and ABF as pled. First, Plaintiff merely alleges that Cashland, Cash America and ABF managers and executives "found the betting pool humorous, [and] concluded that it promoted camaraderie among employees," Doc.

11

#63, ¶ 57, PAGEID #477, with no allegations as to how he became aware of the impressions that Cashland, Cash America or ABF managers and executives had about the betting pool. Plaintiff does not allege that Cashland, Cash America or ABF managers and executives informed him that they found the betting pool humorous and thought that it promoted camaraderie. Rather, Plaintiff alleges that "Cashland and/or Cash America also sent Mr. Barrow a letter refusing to address the concerns Mr. Barrow had raised. ABF never responded in writing to Mr. Barrow's inquiries." *Id.* Absent any supporting allegations, Plaintiff's claim that the managers and executives found a racist betting pool to be good for employee camaraderie is not plausible.

Second, Plaintiff's allegation that Cashland, Cash America and ABF managers and executives "intentionally allowed the betting to pool to continue," Doc. #63, ¶ 57, PAGEID #477, is bereft of any supporting facts that suggest Plaintiff was aware of the intent of those managers and executives. For instance, Plaintiff does not allege that the managers and executives expressly indicated their support for the betting pool to Plaintiff; nor does he allege that they informed him that the pool would continue. Thus, Plaintiff's claim is merely "a legal conclusion couched as a factual allegation," and the Court need not accept it as true. *Papasan*, 478 U.S. at 286.

The complete lack of detail regarding how Cashland, Cash America or ABF managers and executives allegedly ratified the betting pool, combined with Plaintiff's suspect premise that those managers and executives concluded that a racist betting pool promoted camaraderie, means that Plaintiff has not met his obligation to put Cashland, Cash America or ABF on reasonable notice as to the grounds upon which its ratification claims rest. *Twombly*, 550 U.S. at 555. Accordingly, Counts IV and V must

be dismissed as against them. However, the Court will dismiss those counts without prejudice and give Plaintiff <u>one</u> <u>final</u> <u>opportunity</u> to set forth plausible claims for relief, subject to the strictures of Rule 11.[2]

## IV.   CONCLUSION

For the foregoing reasons, the Court REJECTS the Magistrate Judge's Report and Recommendations on the Cashland Defendants' Motion, Doc. #87, and Report and Recommendations on ABF's Motion, Doc. #98, as to the Magistrate Judge's recommendations that the claims against Cashland, Cash America and ABF be dismissed with prejudice. The Court ADOPTS the Reports and Recommendations in all other respects and OVERRULES Plaintiff's Objections thereto. Doc. #100, 107. Plaintiff's claims for invasion of privacy (Count IV) and intentional infliction of emotional distress (Count V) are DISMISSED WITHOUT PREJUDICE as against Cashland, Cash America and ABF, and DISMISSED WITH PREJUDICE as against Daugherty. Judgment shall ultimately enter in favor of Daugherty and against Plaintiff on those counts. Plaintiff will have thirty (30) days from this Entry in which to file a third amended complaint, provided that: (1) he can set forth plausible claims for invasion of privacy and intentional infliction of emotional distress against Cashland, Cash America or ABF; and (2) he can satisfy the requirements of Rule 11. If Plaintiff fails to file an amended

---

[2] In so doing, the Court does not opine on whether allegedly allowing the betting pool to continue was silence sufficient to constitute ratification. *Amato*, 2005-Ohio-189, ¶ 6. Moreover, the Court notes that, while not apparent on the face of the Second Amended Complaint, Plaintiff's briefing and Objections to the ABF Report and Recommendations suggest that he may have been attempting to assert his intentional infliction of emotional distress claim against ABF under both direct liability and ratification theories. Doc. #86, PAGEID #656-57; Doc. #107, PAGEID #794. If Plaintiff can set forth a plausible intentional infliction of emotional distress claim against ABF based on direct liability, then he may do so in an amended pleading.

complaint, or if the amended complaint fails to set forth plausible claims, then the Court will dismiss Counts IV and V against Cashland, Cash America and ABF with prejudice, and ultimately enter judgment in their favor on those claims.[3]

Date: February 13, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[3] On September 16, 2016, the Court issued and entry dismissing without prejudice Count I as against Defendants The Living Word Church, Pat Murray and Jackie Murray (collectively the "Living Word Defendants."). Doc. #109. On October 5, 2016, the Magistrate Judge issued an entry extending the deadline for Plaintiff to file an amended complaint against the Living Word Defendants "until the thirtieth day after District Judge Rice rules on the pending Objections to Reports and Recommendations." Doc. #111, PAGEID #829. As all Objections to Reports and Recommendations have been ruled upon, Plaintiff shall file any amended claim against the Living Word Defendants contemporaneously with any amended claims against Cashland, Cash America or ABF.